Phil S. Flemming (#014778)
YEN PILCH ROBAINA & KRESIN PLC
6017 North 15th Street
Phoenix, Arizona 85014
Telephone: (602) 682-6450
Facsimile: (602) 682-6455
psf@yprklaw.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Gabrielle LaVia, an individual,<br><br>    Plaintiff<br><br>v.<br><br>MRC VSL HV Management, LLC, a Delaware Limited Liability Company, doing business in Arizona as Heritage Village Assisted Living,<br><br>    Defendant. | No.<br><br>**COMPLAINT**<br><br>**(Violations of Title VII, Arizona Civil Rights Act, Arizona Employment Protection Act, Arizona Wage Laws, and Arizona Paid Sick Time Laws)**<br><br>**Jury Trial Demanded** |

Plaintiff, Gabrielle LaVia ("Plaintiff"), by undersigned counsel, for her Complaint against MRC VSL HV Management, LLC ("Defendant" or "MRC") alleges as follows:

**NATURE OF ACTION**

1. This action seeks judgment and remedies for Plaintiff against Defendant MRC for unlawful sex and pregnancy discrimination and retaliation in violation of Title VII and the Pregnancy Discrimination Act, 42 U.S.C. §§ 2000e, *et seq.*, and the Arizona Civil Rights Act, A.R.S. §§ 41-1401 to 1492, *et seq.* Plaintiff also brings claims under Arizona laws for violations of the Employment Protection Act, A.R.S. § 23-1501(A)(3)(c), the Arizona Wage Laws, A.R.S. § 23-350, *et seq.*, and the paid sick time laws, A.R.S. §§ 23-364(B), 23-374.

**PARTIES, JURISDICTION AND VENUE**

2. Plaintiff is a United States citizen residing in the Maricopa County, Arizona.

3. Based on information and belief, Defendant MRC VSL HV Management, LLC is a Delaware limited liability company, registered as a foreign entity to conduct

business throughout Arizona, with its statutory agent located in Maricopa County, Arizona. At all relevant times, Defendant had at least 15 employees.

4. This Court has proper jurisdiction based upon federal question jurisdiction, under 28 U.S.C. § 1331.

5. This Court also has supplemental jurisdiction over the state law claims, pursuant to 28 U.S.C. § 1367.

6. Venue is found in this District Court, pursuant to 28 U.S.C. § 1391(b)(2), because the events alleged to be unlawful giving rise to the claims occurred in this District.

7. Plaintiff Ms. LaVia timely filed her charge of discrimination and retaliation against Defendant with the Equal Employment Opportunity Commission ("EEOC") and received a Notice of Right to Sue from the EEOC on or after June 10, 2022.

8. This action is timely commenced within 90 days of Plaintiff's receipt of the EEOC's Notice of Right to Sue.

**FACTUAL ALLEGATIONS**

9. Plaintiff Ms. LaVia is a female.

10. Defendant employed Plaintiff beginning April 12, 2021, as Administrator of Heritage Village Assisted Living, a type 2 Assisted Living and Memory Care Facility licensed under Arizona law. The proper name of Defendant has been provided by counsel for Defendant.

11. The parties entered into an employment contract based upon the terms set forth in Defendant's "Offer For Employment," executed by Plaintiff and Heather Reeves and Tamara McCann, who are two executives of SAL Management Group, LLC, on behalf of Defendant.

12. SAL Management Group, LLC does business in Arizona as the operations management company overseeing Heritage Village Assisted Living and other related entities. Its website describes the entity as "specializ[ing] in managing Assisted Living Communities."

13. SAL Management Group, LLC is not registered to do business in the State

of Arizona. An entity with that name is registered in the State of Utah as a domestic limited liability company.

14. Plaintiff assumed the position as the facility Administrator and Executive Director, bringing her years of experience working in healthcare facilities and higher education programs.

15. Prior to employing Plaintiff, Defendant had a history of noncompliance issues, deficiencies, and state imposed "tags" from the Arizona Department of Health Services ("ADHS"). Plaintiff learned of the existing Plans of Correction before her employment and became familiar with the required conduct to achieve compliance. Some of Defendant's issues of noncompliance are publicly available on the State DHS website of Survey Reports and Civil Enforcement Actions.

16. At the time she began employment as Administrator and Executive Director, Plaintiff had an existing Arizona license for healthcare and skilled nursing care administration. The position as Administrator at Heritage Village Assisted Living required a specific license for assisted living administrator.

17. At the time Plaintiff's employment began, she and Defendant were aware of the serious adverse impacts due to the COVID-19 pandemic on the Heritage Village Assisted Living facility. These concerns continued throughout Plaintiff's employment.

18. Defendant was aware when it employed Plaintiff that she had to apply for and obtain the assisted living administrator license before she could fully serve as Administrator at the facility.

19. Until Plaintiff obtained her proper licensure, Defendant assigned Linda Leibfried to serve as the facility Administrator and she did so from April 12 until October 18, 2021.

20. During the first week of Plaintiff's employment in April 2021, Defendant provided an initial two or three days of in-person training by Defendant's RDO, Heather Reeves, Regional Director of Operations.

21. Plaintiff promptly applied for the new license classification and obtained it,

effective October 18, 2021.

22. As of October 18, 2021, Plaintiff assumed the full responsibilities of Administrator.

23. During the service of Ms. Leibfried as Administrator at Heritage Village Assisted Living, the State ADHS conducted a survey of the facility in September 2021 and imposed additional noncompliance tags.

24. In response to the State's September 2021 survey and tags, Plaintiff drafted the Plan of Correction for management and Ms. Leibfried to review before submitting to ADHS.

25. During Plaintiff's employment, she reported to management violations of wage laws requiring timely payment of wages, including the bonuses due. She was not paid bonuses due for each month of her employment during 2022.

26. During Plaintiff's employment, she reported noncompliance with State law to Defendant's management and requested corrective actions to achieve compliance.

27. Instead of cooperation and assistance, Defendant's management undermined Plaintiff's leadership and efforts to achieve compliance. Defendant's management refused to authorize Plaintiff's requests to impose discipline on, or to terminate, Ms. Leibfried whose conduct resulted in multiple tagged violations.

28. Plaintiff discovered information that showed Ms. Leibfried intentionally had misreported facility admissions and the census data, in order to achieve her bonuses. Ms. Leibfried had admitted new residents to Heritage Village Assisted Living multiple times without their proper communications, powers of attorney, signed agreements, and onboarding with medical orders, in violation of state regulations.

29. Plaintiff found Ms. Leibfried also processed admissions for residents in need of skilled clinical acuity beyond the scope the assisted living facility was qualified to provide.

30. During Ms. Leibfried's role as Administrator of Heritage Village Assisted Living, she brought on new staff who lacked the proper onboarding, fingerprints and

4

1  required regulatory compliance.

2      31.     When Plaintiff reported and wrote-up Ms. Leibfried, Defendant's management opposed adverse actions against Ms. Leibfried, despite her wrongdoing, and even paid her bonuses.

    32.     In retaliation for Plaintiff's reports, Defendant's management criticized her for being "too negative" toward Ms. Leibfried and then refused to pay Plaintiff's bonuses due.

    33.     Defendant criticized the Performance Improvement Plan that Plaintiff prepared for Ms. Leibfried to address deficiencies and misconduct and to propose disciplinary action as a "personal attack."

    34.     Ms. Reeves informed Plaintiff that Defendant would protect Ms. Leibfried due to her favored religious faith.

    35.     During her employment, Plaintiff informed Defendant of her pregnancy, which became apparent in late 2021.

    36.     Plaintiff scheduled to use paid sick leave and other leave for her pregnancy and maternity care with Defendant from February 7 through March 28, 2022. Management approved the leave for Plaintiff.

    37.     Regional Human Resource Director April Harold input paid sick leave for Plaintiff on February 3 and 4, 2022 and was in the hospital for health care, prior to giving birth.

    38.     Plaintiff actually continued to perform work remotely from the hospital on February 3 and 4, 2022.

    39.     Plaintiff gave birth to her child on February 7, 2022.

    40.     During Plaintiff's pregnancy and maternity leave, Ms. Harold input paid sick leave into the Defendant's timekeeping system for Plaintiff's leave.

    41.     Due to the fact that Plaintiff would be absent more than 30 days, Arizona law required another Administrator in place who was licensed as an Administrator for assisted living facilities. Defendant again designated Ms. Leibfried to serve as Administrator at

5

1  Heritage Village Assisted Living or as Defendant put it to "hang a license" on the wall.

2      42.    Ms. Leibfried was responsible for the facility during Plaintiff's leave and for
3  assisting the State ADHS during its survey of the Heritage Village Assisted Living facility
4  during February of 2022.

5      43.    Based on the cited noncompliance tags from the State ADHS, it appears Ms.
6  Leibfried failed to perform actively as the assigned Administrator and failed to implement
7  the Defendant's Plan of Correction with the State.

8      44.    According to the State noncompliance tags, neither Ms. Leibfried nor any
9  other management designee even printed out the existing paperwork requested by the State
10 during its survey.

11     45.    No legitimate reason explains Defendant's inactions in response to AHDS
12 requests for records and the lack of progress on the Plan of Correction.

13     46.    Defendant uses the events that occurred during Plaintiff's maternity leave as
14 alleged reasons for terminating her.

15     47.    The State delivered its survey of findings on March 10, 2022, including
16 citations for the failure to print-out requested paperwork and other items on the incomplete
17 Plan of Correction.

18     48.    Defendant then blamed Plaintiff for the noncompliance tags cited by the State
19 ADHS survey and the failure to achieve compliance with the submitted Plan of Correction.

20     49.    Plaintiff could not achieve the overall compliance at the Heritage Village
21 Assisted Living facility in the limited time she served as its Administrator, i.e., from
22 October 18, 2021 through February 6, 2022, particularly where Defendant put roadblocks
23 when she reported noncompliance and sought to achieve compliance.

24     50.    Plaintiff's tenure as the licensed facility Administrator totaled approximately
25 75 workdays or 111 calendar days, from October 18, 2021 until February 6, 2022.

26     51.    Although Defendant agreed to provide Plaintiff pregnancy leave, that leave
27 was illusory for two significant reasons.

28     52.    First, during Plaintiff's leave, Defendant managers interfered with her time

away from work by contacting her repeatedly, sent her no fewer than 70 emails exchanged and at least seven text messages from Ms. Reeves, a dozen or more texts with Human Resource Director Lisa Clark.

53. Second, Defendant used the Plaintiff's approximate six weeks of leave when she was not present to respond to the requests from the ADHS during its February survey and was unavailable to complete the Plan of Correction as grounds to allege nonperformance and termination.

54. The responsibility to respond during the February 2022 survey and to continue work to achieve the Plan of Correction rested with Ms. Leibfried during Plaintiff's leave, because Ms. Leibfried was the assigned licensed Administrator.

55. Plaintiff learned that Defendant pressured another female manager to resign after she exercised rights to pregnancy and maternity leave.

56. On March 18, 2022, Plaintiff still was away from work on approved maternity leave through March 28, 2022 when Defendant's RDO Ms. Reeves called her and then texted to schedule a teleconference on that same date.

57. Later during March 18, 2022, Ms. Reeves initiated the scheduled teleconference and connected Regional Human Resource director April Harold on the call. Ms. Reeves suddenly announced to Plaintiff that she was terminated and would be sent information from the Human Resource Office.

58. Defendant sent Plaintiff a Notice of Termination, alleging cause for the termination and emphasizing multiple events that occurred during Plaintiff's leave, including the February 27, 2022 ADHS survey finding delays in completing the Plan of Correction and citing additional tags for noncompliance.

59. Management had denied Plaintiff's requests to take actions to comply with the prior State survey and to fulfill the Plan of Correction. Defendant also was responsible for failures to provide the ADHS personnel paperwork they requested during the survey.

60. Other items described in the Notice of Termination contain specious accusations that Plaintiff was responsible for missing admissions paperwork. In fact,

7

Plaintiff communicated multiple times with RDO Ms. Reeves about the violations committed by Ms. Leibfried who pushed aside legal paperwork requirements in order to admit more facility residents and to obtain her bonus wages.

61. Ms. Leibfried regularly failed to obtain signed lease agreements before admissions and disregarded the requirements to have written Powers of Attorneys or guardian documents, and contracts in place before admission. She also failed to confirm that medical orders and medication paperwork was entered in the resident's file prior to admission.

62. Defendant's management had rejected Plaintiff's effort to discipline Ms. Leibfried for her continuing risks to the residents and to Heritage Village Assisted Living facility arising from her violations and improper admission of residents.

63. Defendant's management disregarded Plaintiff's multiple reports of severe understaffing at the facility and the need for sufficient staff coverage to fulfill the State ADHS requirements for the type 2 facility.

64. The missing paperwork cited by ADHS in its February 2022 survey were continuing problems caused by Ms. Leibfried's job performance which Plaintiff had reported multiple times to Defendant and attempted to correct and address.

65. In fact, Ms. Leibfried was motivated to undermine Plaintiff's work and to blame her for matters under Ms. Leibfried's control in order to pressure Plaintiff to leave or be discharged so that Ms. Leibfried could assume the job Plaintiff had.

66. In order to create grounds to terminate Plaintiff, Defendant claimed she is responsible for failing to achieve the impossible, i.e., to resolve Heritage Village Assisted Living's history of noncompliance tags, State survey tags, and Plans of Correction, in the brief time she was the facility Administrator.

67. During Plaintiff's employment with Defendant, she served as the licensed Administrator for a total of approximately 75 workdays or 111 calendar days, in contrast with Ms. Leibfried's serving as the licensed Administrator for a total of 159 workdays and 229 calendar days (from April 12 to October 18, 2021 listed with ADHS, for 130 workdays

or 189 calendar days, plus from February 7 to March 18, 2022 during Ms. LaVia's leave, for 29 workdays or 40 calendar days).

68. Defendant's failure to achieve the compliance with ADHS resulted from its inaction and continuing failures to respond to Plaintiff's reports of needed corrective actions and from Ms. Leibfried's inactions and misconduct during her service as the licensed Administrator.

69. Defendant wrongly terminated Plaintiff effective March 18, 2022, while she was in the midst of maternity leave that was approved through March 28, 2022.

70. Defendant then promoted Ms. Leibfried and assigned her to the position that Plaintiff had, now referenced on Defendant's website as "Super Executive Administrator." *See* https://heritagevillageassistedliving.com/contact-us/ (last viewed 05/04/2022).

71. Defendant has failed to timely pay Plaintiff her wages due seven working days following her discharge. She received wages that did not include the bonus due.

72. Defendant has failed to timely pay Plaintiff's bonus due for January, February, and March 2022. The basis for Plaintiff's bonuses mirror the grounds for the sales representatives' bonuses, including Ms. Leibfried.

73. Defendant issued to Plaintiff the March 25, 2022 payroll and paystub that shows a deduction of $705.26 without any explanation, justification, or documentation. That paystub also shows an accrued sick leave balance that was not paid to Plaintiff.

74. Plaintiff filed the timely charges of discrimination and retaliation with the Equal Employment Opportunity Commission (EEOC).

75. This action is timely initiated within 90 days of Plaintiff's receipt of the EEOC Notice of Right to Sue.

76. Plaintiff continues to suffer loss of back pay and benefits, lost front pay and benefits, retirement benefits, harm to her profession and reputation, emotional distress, anxiety, and more. resulting from Defendant's wrongful, unlawful discrimination, retaliation, and blacklisting.

77. Plaintiff seeks, to the extent permitted by law, the full panoply of make whole

remedies and, additionally, an award of punitive damages based upon Defendant's egregious wrongful conduct and to deter similar unlawful conduct in the future.

### Claim One

### Violations of Title VII of the Civil Rights Act of 1964, as Amended

78.     Plaintiff incorporates all prior allegations as though fully set forth herein.

79.     Title VII, 42 U.S.C. §§ 2000e, *et seq*. prohibits discrimination based on sex in employment.

80.     Title VII has been amended to include the Pregnancy Discrimination Act, prohibits discrimination "because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k).

81.     Defendant is an employer and Plaintiff was an employee within the definitions of Title VII, 42 U.S.C. §§ 2000e(b) and (f).

82.     Defendant's actions as alleged constitute unlawful discrimination in violation of Title VII prohibitions on the basis of sex or pregnancy.

83.     Defendant unlawfully subjected Plaintiff to discrimination and disparate treatment based on her female sex and pregnancy, contrary to the prohibitions of Title VII.

84.     Defendant treated Plaintiff's maternity leave differently than it treated leave of other employees, by interrupting her repeatedly for work matters during leave.

85.     Defendant terminated her following her pregnancy and during her maternity leave, based on discrimination toward her sex.

86.     As a result of the Defendant's unlawful conduct, Plaintiff has been deprived of equal employment opportunities, has been subjected to adverse employment actions and has been denied a fair and equal hiring process on the basis of her sex and pregnancy.

87.     Defendant acted intentionally with malice or reckless indifference to Plaintiff's protected rights under Title VII when it terminated Plaintiff during her approved pregnancy/maternity leave.

88.     As a result of Defendant's unlawful discrimination, Plaintiff has suffered damages, including lost wages and benefits, lost future wages and benefits, retirement

benefits, harm to her profession and reputation, emotional distress, anxiety. She seeks make-whole relief.

89. Plaintiff also seeks recovery of her reasonable attorneys' fees and costs.

### Claim Two

### Violations of Arizona Civil Rights Act, A.R.S. §§ 41-1461, *et seq.*

90. Plaintiff incorporates all prior allegations as though fully set forth herein.

91. The Arizona Civil Rights Act ("ACRA"), A.R.S. § 41-1463(B)(1), prohibits discrimination in employment and provides it is unlawful for an employer:

> To fail or refuse to hire or to discharge any individual or otherwise to discriminate against any individual with respect to the individual's compensation, terms, conditions or privileges of employment because of the individual's race, color, religion, sex, age or national origin or on the basis of disability.

92. The ACRA defines sex discrimination to include pregnancy related matters: "'Because of sex' and 'on the basis of sex' includes because of or on the basis of pregnancy or childbirth or related medical conditions." A.R.S. § 41-1461(2).

93. Defendant was an employer under the ACRA and Plaintiff was an employee of Defendant.

94. Based on the allegations above, Defendant engaged in unlawful discriminatory acts against Plaintiff based on her sex and pregnancy when it treated her disparately during her pregnancy and following maternity leave.

95. Based on the allegations above, Defendant engaged in unlawful discrimination against Plaintiff when it terminated her during her pregnancy-maternity leave.

96. As a result of Defendant's unlawful discrimination and retaliation, Plaintiff has suffered damages, including lost wages and benefits, lost future wages and benefits, retirement benefits, harm to her profession and reputation, emotional distress, anxiety. She seeks make-whole relief.

97. Plaintiff also seeks recovery of her reasonable attorneys' fees and costs.

## Claim Three

## Violation of Arizona Employment Protection Act, A.R.S. § 23-1501

98. Plaintiff incorporates all prior allegations as though fully set forth herein.

99. Pursuant to the Arizona Employment Protection Act (AEPA), a claim arises where an employer has wrongful terminated an employee in violation of A.R.S. § 23-1501.

100. A.R.S. § 23-1501(A)(3)(c)(i) prohibits an employer from terminating an employee in retaliation for:

> The refusal by the employee to commit an act or omission that would violate the Constitution of Arizona or the statutes of this state.

101. A.R.S. § 23-1501(A)(3)(c)(ii) prohibits an employer from terminating an employee in retaliation for:

> The disclosure by the employee in a reasonable manner that the employee has information or a reasonable belief that the employer, or an employee of the employer, has violated, is violating or will violate the Constitution of Arizona or the statutes of this state to either the employer or a representative of the employer who the employee reasonably believes is in a managerial or supervisory position and has the authority to investigate the information provided by the employee and to take action to prevent further violations of the Constitution of Arizona or statutes of this state ….

102. Plaintiff reasonably reported multiple times to Defendant management the continuing violations and noncompliance with Arizona law governing type 2 assisted living facilities. *See e.g.,* A.R.S. §§ 36-411 and 422; and A.A.C. R9-10-804.1.e; R9-10-806.A.1.b; R9-10-808.A.3.b; and R9-10-816.B.2.a.

103. Plaintiff attempted to gain approval for taking corrective actions, but Defendant rejected the efforts.

104. Plaintiff's reports and actions were protected under AEPA from retaliation by Defendant.

105. After Plaintiff made reports of violations of law, Defendant retaliated and terminated her in violation of AEPA.

106. Plaintiff seeks to recover her lost wages, lost future wages, lost benefits, and

emotional distress, in an amount to be proven at trial.

107. Plaintiff seeks to recover attorneys' fees and costs, pursuant to A.R.S. §§ 12-341, and 341.01, for actions arising out of an employment contract.

### Claim Four

### Violation of Arizona Wage Act, A.R.S. §§ 23-350 to 23-362

108. Plaintiff incorporates all other paragraphs as though fully set forth herein.

109. Defendant was an employer and Plaintiff was an employee of Defendant, within the definitions established by the Arizona Wage Act. A.R.S. § 23-350(2)-(3).

110. Arizona law requires timely payment of wages, including wages of a discharged employee. A.R.S. §§ 23-351 and 353.

111. Arizona law narrowly restricts the circumstances when any wages may be withheld for pay. A.R.S. § 23-352.

112. Defendant as alleged above failed to timely pay earned bonuses to Plaintiff and also withheld wages of $705.26 from one paycheck with no legitimate basis.

113. Defendant's failure to pay timely and proper wages constitutes a threat in retaliation against Plaintiff.

114. Plaintiff seeks award of her unpaid wages plus interest, and treble the amount of wages due, pursuant to A.R.S. § 23-355, to deter Defendants from willful violations and disregard of Arizona law. Plaintiff also seeks recovery of her attorneys' fees and costs.

### Claim Five

### Violation of Arizona Paid Sick Time Laws, A.R.S. §§ 23-364, 371 to 375

115. Plaintiff incorporates all other paragraphs as though fully set forth herein.

116. Arizona law protects employees who use paid sick time for a qualifying reason. A.R.S. § 23-373.

117. Arizona law prohibits an employer from retaliation against an employee who uses paid sick leave: "An employer shall not engage in retaliation or discriminate against an employee or former employee because the person has exercised rights protected under this article." A.R.S. § 23-374.

118.  The statutes provide as remedies that the employee may recover an amount "sufficient to compensate the employee and deter future violations, but not less than one hundred fifty dollars for each day that the violation continued or until legal judgment is final." A.R.S. § 23-364(G).

119.  The paid sick time law establishes a presumption that an employer has retaliated where it takes adverse action against an employee within ninety (90) days of the employee's exercise of rights under the law. A.R.S. § 23-364(B). To rebut the presumption requires "clear and convincing evidence" of a valid permissible reason for the action.

120.  Defendant retaliated against Plaintiff when it terminated her employment during her leave and within the statutory presumptive 90-day period after she had exercised the right to paid sick time.

121.  Therefore, Defendant is liable for the damages of at least $150 per day from the date of the retaliation through final judgment.

122.  Plaintiff also seeks to recover from Defendant her compensatory damages for violation of Arizona paid sick time law and her reasonable attorneys' fees and costs, pursuant to A.R.S. § 23-364(G).

123.  Plaintiff seeks compensatory damages for her lost wages and benefits, lost future wages and benefits, harms to her profession and reputation, emotional distress, anxiety.

124.  Plaintiff also seeks recovery of her reasonable attorneys' fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Ms. LaVia prays for judgment in her favor and against Defendant MRC VSL HV Management, LLC, awarding her:

A. Compensatory damages to make Plaintiff whole for each claim, in the amounts determined at trial;

B. Back pay and lost benefits, with prejudgment interest, in the amounts determined at trial;

///

C. Injunctive and equitable relief, including front pay and lost benefits in the amounts determined at trial and reinstatement, and requiring Defendant to institute policies to eradicate unlawful discrimination in sex and pregnancy in hiring and employment;

D. Award of unpaid and untimely wages, wrongly withheld wages, lost benefits and damages resulting from Defendant's liability;

C. Award of treble damages for each of Defendant's violations of Arizona wage laws;

D. Award of damages for harms of Plaintiff's lost earnings, lost business damages, harm to reputation, emotional distress, and other actual and consequential damages

E. Prejudgment and post-judgment interest in the amounts permitted by law;

F. Reasonable attorney's fees, expenses, and expert fees, 42 U.S.C. 2000e-5(k), and A.R.S. §§ 12-341 and 12-341.01

G. Taxable costs as the prevailing party;

H. Such further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all matters set forth herein to the extent permitted by law.

DATED this 27th day of June 2022.

                YEN PILCH ROBAINA & KRESIN PLC

                By   /s/ Phil S. Flemming
                      Phil S. Flemming
                      Attorneys for Plaintiff